UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

HENRY NEIL STEPHENS,

Defendant/Movant,

Criminal No. 4:15-cr-494-BHH
Civil Action No. 4:17-cv-1670-BHH

**OPINION AND ORDER**

This matter is before the Court upon Defendant/Movant Henry Neil Stephens' ("Stephens") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (ECF No. 58.) For the reasons set forth below, Stephens' motion is denied and the Court grants summary judgment in favor of the United States of America.

**BACKGROUND**

On July 28, 2015, a federal grand jury sitting in the District of South Carolina, Florence Division, returned an indictment that charged Stephens with one count of bank robbery by force or violence in violation of 18 U.S.C. § 2113(a) (Count 1), and one count of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2). (ECF No. 2.) On August 17, 2015, the Court appointed Assistant Federal Public Defender Michael Meetze ("AFPD Meetze") to represent Stephens. (ECF No. 15.) Stephens and the Government entered into a plea agreement on May 19, 2016, whereby Stephens would plead guilty to Count 1 of the indictment and Count 2 would be dismissed. (Plea Agreement, ECF No. 45.) Stephens pleaded guilty to Count 1 on May

19, 2016. (ECF Nos. 43 & 44.) On August 25, 2016, Stephens was sentenced to, *inter alia*, 96 months' imprisonment followed by 3 years' supervised release. (ECF No. 50.)

Stephens filed the instant § 2255 motion on June 26, 2017. (ECF No. 58.) In the motion, Stephens asserts three bases for relief: (1) Stephens' guilty plea was unknowingly and involuntarily given; (2) the firearm/weapons related enhancements applied under USSG § 2B3.1(b)(2)(E) and (F) were erroneously applied, rendering the sentence in violation of due process of law; and (3) trial defense counsel was constitutionally ineffective for failing to object to the sentencing enhancements. (*See* ECF No. 58-2 at 9.) Ultimately however, all of these theories of relief are grounded in Stephens' underlying assertion that, by way of the plea agreement, the parties "agreed that the [G]overnment would not seek any enhancements pertaining to a firearm, because no firearm was used." (*See* ECF No. 58-2 at 9.) The Government responded and moved for summary judgment on November 9, 2017 (ECF Nos. 72 & 73), and Stephens replied on May 16, 2019 (ECF No. 76). The matter is ripe for review, and the Court now issues the following ruling.

## **LEGAL STANDARDS**

**Motions to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255**

A prisoner in federal custody may attack the validity of his sentence pursuant to 28 U.S.C. § 2255 by filing a motion in the court that imposed the sentence. To succeed on such a motion, the prisoner must prove one of the following: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The district court need not hold an evidentiary hearing on a § 2255 motion if "the

2

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The determination of whether to hold an evidentiary hearing ordinarily is best left to the common sense and sound discretion of the district court. *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure . . ., to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.") "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor. The court therefore cannot weigh the evidence or make credibility determinations." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal citations and quotation marks omitted).

**Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The U.S. Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* established a two-prong test for a claim of ineffective assistance of counsel in violation of the Sixth Amendment, under which the criminal defendant must show deficient performance and resulting prejudice. *Id.* at 687. "The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (modifications omitted) (quoting *Strickland*, 466 U.S. at 689–90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).

> In a case where a movant under 28 U.S.C. § 2255 pleaded guilty as a result of alleged ineffective assistance of counsel, to satisfy the second Strickland prong the movant must show that there is a reasonable probability that, but for counsel's deficient performance, the movant would not have entered a guilty plea and instead would have gone to trial.

*Jennings v. United States*, 461 F. Supp. 2d 818, 823 (S.D. Ill. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005);

*Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). Furthermore, "When analyzing counsel's performance at sentencing, prejudice exists when, but for counsel's action or inaction, the movant would have received a shorter sentence." *Id.* "In evaluating a post-guilty plea claim of ineffective assistance of counsel, statements previously made under oath affirming satisfaction with counsel . . . at [a] Rule 11 hearing, are binding absent 'clear and convincing evidence to the contrary.'" *Sanders v. United States*, No. 1:06-cr-30-01, 2008 WL 4279496, at *3 (W.D.N.C. Sept. 12, 2008) (quoting *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1985)).

**Breach of Plea Agreement**

"Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004) (citation omitted). Moreover,

> [a] central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself. Accordingly, in enforcing plea agreements, the government is held only to those promises that it actually made, and the government's duty in carrying out its obligations under a plea agreement is no greater than that of fidelity to the agreement.

*United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009).

## DISCUSSION

### A. Whether There is a Genuine Issue of Material Fact Regarding the Knowing and Voluntary Nature of Stephens' Plea

Stephens' first theory of relief is premised on his assertion that his guilty plea was fraudulently obtained because he "was under the belief that no enhancement for the use of a firearm would be applied, in fact the government's attorney assured his attorney that the government would waive any such enhancement." (*See* ECF No. 58-2 at 10.)

Stephens presents his own calculation of what he believes his guidelines range, minus the firearm/weapon-related enhancements, should have been—namely, 70 to 87 months rather than the range of 92 to 115 months that was applied in his case. (*Id.* at 10–12.) He then argues that the interpretation of the plea agreement is governed by contract law, that the Government is bound by a verbal agreement that no firearm enhancement would be applied, and that the Government breached this verbal agreement. (*See id.* at 13–14, 16; Stephens Aff., ECF No. 58-3.) In his affidavit, Stephens states:

> Prior to me being sentenced in Crim No. 4:15-CR-00494 in federal court for the District of South Carolina, all parties orally agreed that no firearm or firearm enhancements would be sought.
> When I was sentenced my offense level was increased by 3 levels for firearm related enhancements, which violated my understanding of the plea agreement. My counsel failed to object. My plea was unknowingly entered and had I known the enhancements would be applied I would have exercised my right to a trial.

(Stephens Aff. at 1.)

AFPD Meetze submitted an affidavit setting forth his recollection of his representation in Stephens' case. (Meetze Aff., ECF No. 69.) Meetze asserts, and the Amended Presentence Investigation Report Substantiates ("Am. PSR"), that in addition to the indictment in this case, Stephens was facing three pending federal bank robbery charges in the District of Minnesota. (Meetze Aff. at 1; Am. PSR ¶¶ 6–9, ECF No. 49.) Meetze states that at the time the instant case was pending, Stephens had not yet been indicted in the District of Minnesota and was interested in trying to resolve all four bank robbery charges at once, a result which the parties successfully achieved. (Meetze Aff. at 1–2.) Meetze further states that in order to resolve the Minnesota robberies as part of this case, Stephens had to agree to stipulated facts regarding those robberies in his plea

agreement, which had the pragmatic effect of Stephens pleading guilty to those robberies and admitting certain facts for sentencing purposes. (*See id.* at 2; Am. PSR ¶¶ 53–87 (reflecting multiple counts 1, 1(a), 1(b), and 1(c) of bank robbery and related increase in offense level).) Additionally, Meetze explains:

> The robbery guideline contains enhancements in descending order of seriousness depending upon whether or not a firearm is discharged, otherwise used, or brandished or possessed. There are additional progressively less serious enhancements which apply if a dangerous weapon was otherwise used, or brandished or possessed. There is a final 2-level enhancement if a threat of death was made.
>
> Typically, it is this aspect of the robbery guideline which is of particular concern for defendants, because these enhancements can range from 7 levels all the way down to 2 levels. All of the Minnesota robberies involved either a note or oral statement by Mr. Stephens that he had a gun. During plea negotiations, the parties discussed which enhancements would likely apply for the Minnesota robberies. The AUSA from Minnesota said that he did not believe his evidence showed that Mr. Stephens actually had a gun during the robberies. For sentencing purposes, the Minnesota AUSA believed his evidence did support the 2-level "threat of death" sentencing enhancement.
>
> At the core of Mr. Stephens' petition is the assertion that the parties had an agreement that there would be no "firearm" enhancement applied to increase Mr. Stephens' offense level for any of the robberies.
>
> Mr. Stephens' assertion is technically correct. There was an agreement that Mr. Stephens would not receive a "firearm" sentencing enhancement, because the evidence did not support the enhancement. As part of this agreement, I specifically discussed the 2-level "threat of death" enhancement with him, because the AUSA in Minnesota did believe the evidence supported that enhancement.
>
> When the first PSR came out, it contained a 5-level enhancement for possessing a firearm during the Minnesota robberies. The U.S. Probation Office amended the PSR once it became aware of the AUSA in Minnesota's statements about the firearm enhancement.
>
> *The revised PSR did not have any enhancement for a firearm, but it did have a 3-level enhancement for one of the robberies in which Mr. Stephens said he had a gun and reached his hand into his pocket.* Because of this one factual difference, one Minnesota robbery ended up with a total offense level of 25 instead of 24. Mr. Stephens' combined offense level for all of the robberies, therefore, ended up one-level higher than my estimate.
>
> I did not object to the government breaching the plea agreement, because the government did not breach the plea agreement in my opinion.

7

The agreement did not address whether or not a "dangerous weapon" was possessed during the robbery. The parties honored the agreement which was based on the actual evidence in the case, by having the firearm enhancement removed from the first PSR.

After reviewing the revised PSR with Mr. Stephens, we decided not to make any objections to the revised PSR.

Based on the foregoing, I do not believe I was ineffective in my representation of Mr. Stephens.

B. <u>Mr. Stephens also asserts that my ineffectiveness rendered his guilty plea unknowing and involuntary</u>

To the extent it may be necessary to respond to this allegation, I believe that Mr. Stephens understood that he would not get a firearm enhancement at sentencing, and that he would get a "threat of death" enhancement at sentencing.

(Meetze Aff. at 2–4 (emphasis added); *see* Am. PSR ¶ 68 (reflecting 3-point enhancement for possessing a dangerous weapon during the robbery of TCF Bank, count 1(b)); ¶ 81 (utilizing the count 1(b) adjusted offense level as the greater of the adjusted offense levels among the four counts).)

The Court need not weigh Stephens' and AFPD Meetze's assertions against one another to find that Stephens has not set forth a viable claim that his guilty plea was unknowing and involuntary. Prior to his guilty plea, Stephens executed a written plea agreement with the Government. (Plea Agreement, ECF No. 42.) The plea agreement set forth stipulated facts of the Minnesota robberies that Stephens committed as to US Bank I (paragraph 2(a), corresponding to Am. PSR count 1(a)), TCF Bank (paragraph 2(b), corresponding to Am. PSR count 1(b)), and US Bank II (paragraph 2(c), corresponding to Am. PSR count 1(c)). (Plea Agreement ¶ 2.) The plea agreement also provided that, pursuant to USSG § 1B1.2(c), the Minnesota offenses would be treated as if Stephens had been convicted of additional counts charging those offenses and that this conduct would be considered relevant conduct in determining Stephens' guidelines

calculation. (*Id.*)

On May 19, 2016, the Court conducted a thorough Rule 11 colloquy with Stephens under oath prior to accepting his plea and adjudging him guilty. (*See* Plea Tr. at 3–21, ECF No. 66.) The undersigned asked Stephens a series of questions concerning his relationship with counsel, counsel's efforts on the case, and whether Stephens was satisfied with counsel's representation; Stephens indicated that he was satisfied with the representation he received and that he understood the substance of the advice provided to him. (*Id.* at 6–7.) Stephens was advised that he faced a maximum penalty of 20 years' imprisonment; Stephens indicated that he understood the penalty range and still wanted to plead guilty. (*Id.* at 11, 15, 21, 23.) The Court then engaged in the following question and answer exchange with Stephens:

> Q      If you plead guilty I'll have to determine the appropriate sentence to be imposed under the Sentencing Reform Act of 1984 the U.S. Sentencing Commission has issued guidelines for judges to follow in determining sentences in a criminal case.
>
> I'm required to consider the statutory sentencing factors that are set out in Section 3553(a) of Title 18 as well as the advisory guidelines. Have you and Mr. Meetze talked about how the statutory factors and the advisory guidelines might affect your case?
>
> A      We have, Your Honor.
>
> Q      *And your lawyer can only give you an estimate though of what your guideline range might be. Do you understand that the sentence I impose might be different from any estimate that he might have given you?*
>
> A      *I do.*
>
> Q      Now, I'm not going to be able to determine the guideline sentence for your case until after the presentence report has been done and you and the government both have had a chance to challenge the facts that are reported by the probation officer. Do you understand that?
>
> A      I do.
>
> Q      *Your sentencing range could be substantially affected by relevant conduct, that means you could be held accountable for criminal conduct in which you were directly involved in preparation for, during, or in the course of attempting to avoid responsibility for the offense with which you've been charged.*

9

It also means that where you have been involved in any jointly undertaken criminal activity with others, you could be held accountable for the conduct of others that was both in furtherance of your jointly undertaken activity and reasonably foreseeable in connection with that activity. *Do you understand that?*

A       *I do.*

Q       And have you discussed that subject with your lawyer?

A       I have.

Q       And even if the government has agreed to dismiss some counts of your indictment, your relevant conduct could include conduct alleged in counts of the indictment which will be dismissed. Do you understand that?

A       Yes, Your Honor.

Q       Now, after it's been determined what guidelines do apply to your case, I've got the authority in some circumstances to impose a sentence that's more severe or less severe than the sentence called for by the guidelines. Do you understand?

A       Yes.

(*Id.* at 11–13 (emphasis added).)

The Court directed Government counsel to summarize the indictment and provide for the record the elements of the offense and applicable penalties. (*Id.* at 15–16.) Government counsel did so, then summarized the plea agreement, including the stipulated facts pertaining to the Minnesota offenses and the factual basis for the South Carolina offense. (*Id.* at 16–21, 25–27.) Stephens agreed with the Government's proffer of the stipulated facts for the Minnesota offenses and stated that he was indeed guilty of those offenses (*id.* at 21); with respect to the South Carolina offense Stephens stated, "I admit to the elements of the crime," and that he wished to plead guilty—AFPD Meetze explained, "Your Honor, to the extent of [sic] what the U.S. attorney read may constitute some sort of sentencing enhancement. He would prefer to just admit to the elements at this time." (*Id.* at 27–28.) The Court asked Stephens whether the plea agreement set out his entire agreement with the Government concerning the charges pending against him

10

and he responded, "That's correct, Your Honor." (*Id.* at 22.) The Court then stated:

> And generally, any recommendations of the government or stipulations are not binding on me. I may not follow the recommendations or stipulations and I could sentence you . . . up to the maximum possible penalty if I felt it was appropriate and if permissible under the law without permitting you to withdraw your guilty plea and impose a sentence that's more severe than you anticipate. Do you understand that?

(*Id.* at 22– 23.) To which Stephens responded, "I do." (*Id.* at 23.) Based on the totality of Stephens' responses to the undersigned's questions the Court found that his plea was knowing and voluntary, and was supported by an independent basis of fact containing each of the essential elements of the offense. (*Id.* at 28.)

In the Fourth Circuit, the validity of a guilty plea and the defendant's corresponding guilt are deemed to be conclusively established absent clear evidence to the contrary:

> Because a plea of guilty is a solemn, judicial admission of the truth of the charge, a prisoner's right to contest it is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L.Ed.2d 136 (1977). His statements at arraignment that facially demonstrate the validity of his plea are conclusive unless he presents reasons why this should not be so. *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975).

*Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981). The Fourth Circuit has provided the following guidance to courts confronted with a defendant who pleaded guilty but later seeks to attack the knowing and voluntary nature of that plea:

> [W]hen a defendant pleads guilty, the court must be able to rely on the defendant's self-interest and his truthful testimony in deciding to find the defendant guilty based on a guilty plea. *Moreover, to avoid dependence on pre-colloquy statements, agreements, advice, and misunderstandings*, the court at the Rule 11 colloquy is required to review with the defendant *de novo* all of the material components of the guilty plea. As a consequence, when a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process. We repeat what we said before, that an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements

made under oath to accept a guilty plea.

*United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) (emphasis added) (citations omitted).

All of Stephens answers, while under oath, to the Court's questions during the Rule 11 colloquy indicated that his plea was knowing and voluntary, that he understood the possible penalties he was facing, and that he was satisfied with the representation he received from AFPD Meetze. Other than the bald assertion in his affidavit that he would have exercised his right to a trial if he had known a 3-level "firearm related enhancement" would be applied, Stephens has not provided any evidence to substantiate the claim that his plea was unknowing or involuntary.

First, to the extent Stephens is attempting to raise a free-standing claim that his plea was unknowing or involuntary, such a claim is barred by the waiver provision in his plea agreement. (*See* Plea Agreement ¶ 6.) That provision states, in pertinent part:

> The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect the defendant's sentence.

(*Id.*) The Fourth Circuit has held that a waiver provision of this type is enforceable and precludes a collateral attack on a movant's conviction and sentence in the context where a movant subsequently claims his plea was unknowing and involuntary. *See United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing

12

and voluntary.").

Second, to the extent Stephens is attempting to challenge the validity of his plea by way of an implied ineffective assistance of counsel theory, he has not shown that AFPD Meetze provided inaccurate or substandard advice regarding the choice to plead guilty, let alone *constitutionally deficient* pre-plea advice. He has not explained why any of his admissions during the Rule 11 colloquy, along with statements of satisfaction with his counsel's performance and understanding of his sentencing exposure, should be ignored or treated as untrue. "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d 221–22.

Moreover, Stephens has not provided any evidence of prejudice such that there is a reasonable likelihood he would not have pleaded guilty if he knew that the 3-level enhancement for possession of a dangerous weapon would be applied to his guidelines calculation. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (stating that in order to satisfy *Strickland's* prejudice requirement in this context a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Indeed, Stephens' first theory of relief seems to be based on an erroneous understanding of how his guidelines range was calculated. As AFPD Meetze pointed out in his affidavit, the possible spectrum of firearm/weapon enhancements under the robbery guideline vary in their subject matter and severity, all the way down to the "threat of death" enhancement—the application of which does not

13

necessitate the possession of a firearm *or* dangerous weapon:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

USSG § 2B3.1(b)(2). For two of the Minnesota offenses (counts 1(a) and 1(c)), Stephens received the lowest enhancement of 2 levels for having made a threat of death. (*See* Am. PSR §§ 54, 75.) For the TCF Bank robbery in Minnesota (count 1(b)), Stephens received the next lowest enhancement of 3 levels for possession of a dangerous weapon—*not* possession of a firearm, which would have carried a minimum enhancement of 5 levels. (*See* Am. PSR § 68.) In his reply in support of the § 2255 motion, Stephens argues:

> The 5-level enhancement [in the original PSR] was removed because that was part of the plea agreement. . . . There was an agreement that there would be no "firearm" related enhancement[]s sought in this case.
> The Government then in the same breath gives me a 2-level "Threat of death" enha[n]cement and 3-level dangerous weapon enha[n]cement. 3+2=5 so here we go again, [I am] at a 5-level "firearm" or dangerous weapon. This is why the U.S. Attorney in Minnesota did not p[u]rsue a "firearm" enhancement. So where is the benefit of the plea agreement?

(ECF No. 76 at 5.) This argument belies Stephens' failure to understand that only one of the four underlying adjusted offense levels was used to calculate the total offense level in his case (*see* Am. PSR ¶ 81); thus, only *one* USSG § 2B3.1(b)(2) enhancement of 3 levels was applied, *not* the "threat of death"+"dangerous weapon" combination that Stephens suggests.

Furthermore, Stephens stipulated to the truth of the factual basis supporting the application of the 3-level dangerous weapon enhancement in the plea agreement (*see* Plea Agreement ¶ 2(b)) and confirmed the truth of those facts under oath during the Rule

14

11 colloquy (*see* Plea Tr. at 16–17, 21). Specifically, the differentiating fact that led to the dangerous weapon enhancement for the TCF Bank robbery—whereas only the threat of death enhancement was applied for the US Bank robberies—was that Stephens "*orally stated* [to the teller] that he had a gun, he reached his hand into his pocket, and began counting down from ten." (*See* Am. PSR ¶¶ 4(A), 8; Plea Agreement ¶ 2(b) (emphasis added); Plea Tr. at 17.) Contrary to Stephens' protestations, the plea agreement does not prevent the Government from seeking a deadly weapon enhancement because it does not address the matter of enhancements at all. (*See* ECF No. 42.) Apparently, counsel for both sides discussed the 5-level firearm enhancement being removed from the original PSR, and that agreement was honored in the Amended PSR. (*See* ECF No. 49.) However, it is simply inapposite for Stephens to claim that the Government breached the plea agreement, when the agreement includes no language limiting the imposition of a dangerous weapon and/or threat of death enhancement under USSG § 2B3.1(b)(2). Simply put, there is no evidence that the Government breached the plea agreement, no evidence that counsel's performance was deficient, and no evidence of prejudice.

In *United States v. White*, 366 F.3d 291 (4th Cir. 2004), the Fourth Circuit cautioned district court's not to summarily dismiss a movant's § 2255 challenge to his plea colloquy or plea agreement where the movant raises legitimate questions regarding the underlying facts:

> Although, as [*Blackledge v. Allison*, 431 U.S. 63 (1977)] teaches, a court can summarily dismiss allegations of a petitioner who attempts to challenge statements made during his plea colloquy or in his plea agreement, the district court in this case subjected White's allegations to the wrong legal standard. A court cannot *summarily* dismiss a petitioner's allegations simply because the petitioner has yet to prove them by a preponderance of the evidence. Summary dismissal of habeas allegations is "warrant[ed]" only if

> a habeas petitioner's allegations "when viewed against the record of the plea hearing," are "palpably incredible" or "patently frivolous or false." *Blackledge,* 431 U.S. at 76, 97 S. Ct. 1621 (internal quotation marks and citation omitted).

*White*, 366 F.3d at 297 (vacating and remanding district court's summary dismissal of § 2255 motion). Nevertheless, the *White* court acknowledged that only the "rare" case, involving the presence of "extraordinary circumstances," warrants an evidentiary hearing. *Id.* at 300.

In the instant case, when viewed against the record of the plea hearing, the Court finds Stephens' allegation that Government counsel made an *ab extra* promise not to seek *any* enhancements at sentencing to be palpably incredible. That allegation has no impact on the validity of Stephens' guilty plea, which was then, and is now, knowing and voluntary. Accordingly, the § 2255 motion based on this theory is denied.

### B. Whether the USSG § 2B3.1(b)(2) Sentencing Enhancements Were Erroneously Applied, Rendering the Sentence in Violation of Due Process

Stephens' second theory of relief is premised on his assertion that the 3-level enhancement for possession of a dangerous weapon during the TCF Bank robbery (Am. PSR count 1(b)) and the 2-level enhancements for making threats of death during the US Bank robberies (Am. PSR counts 1(a) and 1(c)) were erroneously applied. (*See* ECF No. 58-2 at 16–17.)

As previously stated, this collateral challenge to Stephens' sentence is barred, in the first instance, by the waiver provision in the plea agreement. (*See* Plea Agreement ¶ 6); *Lemaster*, 403 F.3d at 220. But even if the claim was permitted, it lacks merit. The Fourth Circuit has upheld the enhancements applied in the instant case in previous cases presenting nearly identical fact patterns. *See United States v. Souther*, 221 F.3d 626,

16

628–29 (4th Cir. 2000) (affirming 3-level dangerous weapon enhancement where defendant handed bank teller a note stating that he had a gun and placed his hand in his coat pocket creating the appearance that he had a gun, though he did not actually possess a dangerous weapon during the robbery); *United States v. Goodwin*, 545 F. App'x 204 (4th Cir. 2013) (affirming 2-level threat of death enhancement where defendant produced a note stating that he had a gun and as bank teller was reading the note and collecting money defendant made movements with his hands near his waist). Stephens stipulated to the fact that during the TCF Bank robbery he orally stated that he had a gun, reached his hand into his pocket, and began counting down from ten. (Plea Agreement ¶ 2(b).) This is sufficient to sustain the 3-level dangerous weapon enhancement. Stephens further stipulated to the facts that: (1) during the US Bank I robbery he handed the victim teller a demand note that stated, "give me all the money you have I have a gun," or words to that effect (*id.* ¶ 2(a)); and (2) during the US Bank II robbery he handed the victim teller a demand note that stated, "give me all the money I have a gun," or words to that effect, then orally stated to the teller, "you got this," and began to count down from five (*id.* ¶ 2(c)). These facts are sufficient to sustain the 2-level threat of death enhancements.

Accordingly, even viewing the facts in the light most favorable to Martin and construing all available inferences in his favor, he has not set forth a viable claim that the USSG § 2B3.1(b)(2) enhancements were erroneously applied. The § 2255 motion based on this theory is denied.

### C. Whether Counsel Was Ineffective for Failing to Object to the USSG § 2B3.1(b)(2) Sentencing Enhancements

Stephens' third theory of relief is premised on the assertion that AFPD Meetze's

performance was constitutionally deficient for having not objected to the application of USSG § 2B3.1(b)(2) enhancements where the Government breached the plea agreement and where those enhancements were erroneously applied. (*See* ECF No. 58-2 at 18–19.)

As explained above, there is no evidence that the Government breached the plea agreement and the § 2B3.1(b)(2) enhancements were proper under the law. Thus, Stephens has not made any showing that Meetze's performance fell below an objective standard of reasonableness by not objecting to the enhancements. Neither has Stephens shown any evidence of prejudice. AFPD Meetze filed a motion for variance on Stephens' behalf, which the Court considered and denied. (Sentencing Tr. at 16, ECF No. 65.) However, the Court credited Meetze's arguments when fashioning a sentence near the low end of the guidelines range, acknowledging Stephens' very mature acceptance of responsibility for the robberies in Minnesota and willingness to work with authorities to resolve all of the cases at once. (*See id.*) Accordingly, the § 2255 motion based on Stephens' third theory of relief is denied.

### D. Evidentiary Hearing

As more fully explained above, the Court finds that it is clear from the pleadings, files, and records of this case that Stephens is not entitled to relief; thus, an evidentiary hearing is not necessary. *See* 28 U.S.C. § 2255(b); *Raines v. United States*, 423 F.2d 526 (4th Cir. 1970) (holding it is within the district court's discretion to deny without a hearing § 2255 motions where the files and records conclusively show that the prisoner is entitled to no relief). The Court finds that Stephens has failed to set forth arguments that would merit a hearing. Accordingly, his request for an evidentiary hearing is denied.

18

**E. Appointment of Counsel**

Stephens also incorporated a request for the Court to appoint counsel to assist him in the prosecution of his § 2255 motion. A petitioner has no constitutional right to counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Nevertheless, the Court has discretion to appoint counsel to a financially eligible person when called for "in the interests of justice." 18 U.S.C. § 3006A(a)(2)(B). Upon review of the record in the instant case, the Court finds that the "interests of justice" do not warrant the appointment of counsel. Accordingly, Stephens' request to appoint counsel is denied.

## CONCLUSION

For the reasons set forth above, Movant Henry Neil Stephens' motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 (ECF No. 58) is DENIED. Respondent United States of America's motion for summary judgment (ECF No. 73) is GRANTED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

December 13, 2019
Greenville, South Carolina

*****

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.